And Ms. McKee, if you would announce our first case for argument. Yes, Your Honor. The first case for argument, case number 24-3487 from the District of Minnesota, Kristen Tix v. Robert Tix. Mr. Fidler. Good morning, Your Honors, and may it please the Court. My name is Mark Fidler, and I represent the appellant, Kristen Tix, now known as Kristen McGowan. Your Honors, this case asks whether a tribal court may exercise jurisdiction over a nonmember who lived off-reservation where no act, property involved, or conduct occurred on tribal lands or within the territorial boundaries of the Prairie Island Indian community, and furthermore, where Congress has never extended such jurisdiction over nonmembers. The main case, as you know, is Montana v. United States, and under its progeny, the answer to that question is no. The Prairie Island Tribal Court lacks subject matter jurisdiction as a matter of federal law, and its decree should be declared null and void. At the outset, I want to emphasize a few big themes. One, this is a jurisdictional boundary case. We're not talking about the competency of tribal courts, issues of cultural competency, and it's not a matter of comedy. It's a matter of straight legal jurisdiction, and in fact, under Montana, there's a presumption against jurisdiction over nonmembers. It does have a consent exception, but as applied here, it's based on a far-fetched theory unsupported by any case law. The consent to marry is consent to jurisdiction under the Montana case. Why isn't, we have a member and a nonmember. Yes, they lived off the reservation, but why doesn't concurrent jurisdiction, what the district court found, you could bring it in state court, you can bring it in tribal court, because we have one of each. Why doesn't that work? Well, concurrent implies that there's jurisdiction on both courts, and clearly, the state court found it did have jurisdiction. In fact, it found it was the home state, and in any other context, it would have stayed there. It's not concurrent jurisdiction, because to be concurrent, there has to be federal jurisdiction under the Montana line of cases, and there isn't. So if the member and the nonmember both lived on the reservation, would that then mean that the state court has no jurisdiction, and that you'd be in tribal court, or what would be the effect if they lived on the reservation? Well, if they're on the reservation, they're still residents of the state of Minnesota, so there would be, the state would have jurisdiction. Would the tribe? I guess the question there is, would the application of state jurisdiction infringe on tribal sovereignty where everybody resided on the reservation, and they wanted it to be in tribal court? But both parties would have, in that instance, would have a right of access to state court and to tribal court. Would somebody be able to veto it? I'm asking this because I'm trying to figure out what the relevant factors are in terms of jurisdiction. In other words, say that one of the two spouses filed in tribal court. We have the exact same situation, but they lived on the reservation. Would then, in your view, would what the district court did here be correct, that you could defer or that state court could abstain and that the tribal court would have jurisdiction? I think the question that would have to be resolved is, did they reside on tribal land or was it fee land? And so there's an argument that if it's on fee simple land, their marital home is on fee simple land. But if it's on tribal land, is there tribal court jurisdiction? And if so, what's the  There would be under the Montana case because by tribal land, we mean non-fee simple land. And which Montana exception would apply then? The consent. The consent. Although that doesn't reference the first tribal, the first Montana exception doesn't reference tribal land, does it? I believe it's implicit that the consent has to govern conduct, a transaction, a contract, contractual relationships that are tied to tribal land. And we saw that in the Ninth Amendment in Lexington. Would it actually be an exception or would you not even reach it? And the reason why I ask that is because I just wonder whether there's inherent tribal sovereignty, whether it goes to the limits of the reservation's land and that that and not an exception would apply. I don't know. I haven't touched this area in a while. Yeah. No, it would seem to me, based on my reading of the cases, that it would come under the inherent sovereignty. You know, if you're off, if you're not, if the guy that was hunting and fishing in Montana, if he was on tribal land, not on his own fee simple lands, then Montana would have been decided differently. They would have had jurisdiction over him and the consent provision would not have been at issue. Now, so the Supreme Court has made some other exceptions. So even if there is consent, apart from the two Montana exceptions, the Court has said that Congress has the power to extend the jurisdiction of tribes by an express congressional grant, and they have not done so in this case. So the Supreme Court's made clear in Montana, the Atkinson case, Nevada versus Hicks, and Plains Commerce, that tribes lack civil authority over nonmembers, and that is because tribes, while they do have inherent sovereignty, have lost sovereignty over nonmembers off the reservation by virtue of being deemed domestic dependent nations. And that goes all the way back to Justice Marshall and the Marshall Trilogy. Counsel, to what extent does foreseeability play into our analysis here? I mean, I think it's hard for me to pin down. It seems to pop up at various times. I think it's in Plains Commerce. Right. Where the Chief Justice mentions that. I mean, why isn't it foreseeable in this case, given the particular facts? You know, she knows he's a tribal member. She supported the marriage, you know, the couple is supported by tribal money. She's receiving basic services from the tribe. She's attending social events. I mean, you know, it's not out of the blue here that the tribal court wants to assert jurisdiction. Is that relevant to our analysis here? Because it has been in various cases, and I can't figure out when it is and when it isn't. Right, right. No, and I concede, like, the whole foreseeability test, if you call it that, and even whether there is a foreseeability test is an issue to be decided in this case. So in Plains, I think the word foreseeability was put in there, but it wasn't like a foreseeability test in terms of, like, tort law or negligence or whether harm is foreseeable. Instead, in Plains, you just look at the facts there. It was a highly regulated bank transaction. Could they sell non-fee land? And the tribe wanted to bar the sale of fee land. And they said, you have to look at the stakes involved. And so if I go to Plains Commerce, they said the subjecting non-members to tribal regulatory authority without commensurate consent. So, yeah, the word foreseeability is in there, but I think foreseeability has to, the whole concept has to be rooted in what's at stake. And so what are you giving up? It's almost like a waiver argument. And so the Supreme Court said in Plains, tribal sovereignty has to be based on commensurate consent to the stakes. So tribal sovereignty is a sovereignty outside the basic structure of the Constitution. The Bill of Rights doesn't apply to Indian tribes, and it didn't apply in the tribal court below. Indian courts differ from traditional American courts in a number of significant respects. And maybe to the most important point here, non-members have no part in tribal government. They have no say in the laws and regulations that govern tribal territory. And here McGowan had no say in the laws that were applied to her. Is it essentially your position that the consensual relationship exception can't apply to off-reservation conduct? Yes. How do you square that with API and DISH Network then? API dealt with the second exception, not the first. And there was attorney process investigation, I think that was the name of this company. They were involved in a bitter internal tribal war, that is not an overstatement, involving elections of war-warring factions on the Tribal Council. They had members of their company show up, like 20-some agents with batons, threatening violence. So that invoked the second Montana exception. And that case was very telling because it showed just how serious and how narrow the exceptions are to Montana that this court has upheld in other cases. So there, we're not talking about actions that just touch on tribal interests or affect them. No, they have to directly imperil and affect the tribal. But isn't one of the areas that the cases, I mean, like Kodiak, our case talks about domestic relations, I think, or internal relations. And there are other cases that reference, that I can't remember off the top of my head, I think, about domestic relations, that those go to the sort of self-governance and tribal integrity and preservation of the tribal nature. Doesn't that make a difference that we're dealing with that sort of fundamental, you know, sovereignty to control those sorts of basic relationships? Why doesn't that apply here? Is it simply because that's only limited to members? It's limited to members on non-fee land. The same analysis could be made to the gentleman in Montana. You know, he, they couldn't regulate his hunting and fishing. That goes to the core of the tribe's regulatory right, their sovereign rights. It didn't touch him. And the claims, they couldn't affect the contract. Your Honor, you raised the Dish case. That was interesting because even there, it was off-reservation contact. In Dish Network, there was a subscription that was canceled by a Turtle Mountain member. And this court said, in response to Dish, they said, hey, we're not, we don't do business on the reservation. We have a contract with somebody. Our signals transmitted to subscribers there. And the gentleman who canceled said, well, Dish filed an abusive process claim, which was like a tort, by filing a counterclaim. And they said, well, the tort impacted the tribal land. So that's, and to be clear, that, they didn't, this court didn't decide Montana on the merits. It was an exhaustion case. But it did imply that because the tort had an impact on tribal land, there was still that connection with tribal land. What if, you know, I'm thinking about how we would write this opinion, but what about a situation in which, say, same situation we have here with one difference, which is they had a place on tribal land and they had a place off-tribal land. So they had places there, do you think, in your view, under your view of the Montana? I'd say if they were on tribal land, yes, jurisdiction. If they weren't, they wouldn't. So I mean, so the court would have jurisdiction over certain assets. So like, let's say they had a house on one, on fee, and a house on non-fee. I'd say, well, under Montana, you got to, it's complicated for sure, but you got to divvy it up. Why doesn't, and this is the question I think that is underwriting a lot of this, why isn't the fact that they have money from the tribe the equivalent of having a place on reservation property? You know, if I win the lottery, do I get money? Is the money from this, am I paid by the state of Minnesota? I mean, ultimately, that's the source of the funds. But under the Indian Gaming Regulation Act, and this was invoked by opposing counsel, it says the funds can only be granted to members, and it can't be granted to non-members like Ms. McGowan. Well, it was never granted to her. It was granted to Mr. Tix. And so the tribal law says, well, here's how your property is divided, and if your property, the per capita benefits, wherever they come from, if some of it comes from the per caps, that can't be counted for maintenance purposes for elementary. But even if, and this is a key point, even if almost their entire income comes from tribal gaming, I mean, it seems like there's a significant portion of it. It seems to me that distinguishes it in the case, is distinguishable, excuse me, from a case where you have a mix of income, or you have a tribal member and a non-tribal member who both live off the reservation, but they were, you know, a target versus getting money from tribal gaming. And back to Montana, they weren't on tribal land. They were in Edina, Minnesota. It falls in that, so the presumption, your argument is that's implicit in Montana, right? The tribal land requirement for Montana, okay. Yeah, and the Plains followed up on that and said, under the consent provision, and it said about consent, these laws and regulations may be fairly imposed on non-members only if the non-member has consented, either expressly or by his actions. And then this next sentence is critical. Even then, the regulation must stem from the tribe's inherent sovereign authority to set conditions on entry, preserve tribal self-government, or control internal relations. I wanted to ask about the Rule 19 issue, because I think that that's an interesting point, the joinder issue. What's your view on that? The tribe is not a necessary party, because complete relief can be provided to the parties without the tribe's involvement. So the opposing council is arguing that they're a necessary party because the tribe could be subjected to, and he could be, Mr. Tix could be subjected to inconsistent obligations. Well, he can't. So if you reverse the order below, saying that the divorce decree and the division of property and all that, it's null and void, we go to state court, there are no other obligations except to be imposed by the state court. And the tribe's law about where its per capita benefits go would be respected. It's just not an issue. Mr. Fidler, under your view of the consensual relationship exception, is there any conduct covered by that exception that is not already covered by the second exception? I think what you're asking is, if there was consent, doesn't it in any case have to affect the tribal sovereignty and tribal lands? It almost seems like you're reading the two together, you know, melding the two together, so to speak. Fair. And I think the response is that's implicit in Montana. And it's express in Plains, where they did merge the two. Would you like to reserve some time for rebuttal? Yes. This was up at 20, so I've got two minutes left here. I'll reserve some time. Thank you, Your Honor. Very well. Thank you. Mr. Powell, good morning. Good morning, Your Honors, and may it please the Court. I'm Leonard Powell on behalf of Appalooie, Robert Tix. The Prairie Island Tribal Court had concurrent jurisdiction over this divorce by virtue of McGowan's consensual relationships with the tribe and its members under the first Montana prong, by virtue of the divorce's impact on tribal resources and tribal children under Montana's second prong, by virtue of the tribe's inherent jurisdiction over family law matters involving tribal members, and by virtue of the tribe's in rem authority over tribal property and over the statuses of tribal members. Now, I'd like to focus this morning on the basis that the district court ruled on today and that was the focus of most of the arguments so far, which is Montana's first prong. Before you do, a question on the second Montana exception. That doesn't show up in the district court's opinion, I don't think. And the assertion is made in the briefs that that was not raised below. Is that accurate? Or, you know, your colleagues on the other side start their brief by saying this is a Montana exception 1 case. Your argument is exception 2 applies as well. Was that made below? You know, the district court chose not to address that or wasn't presented with that. So McGowan's settlement judgment brief did raise the second prong issue. It is true that we did not raise it in our motion to dismiss, but it's a jurisdictional question that can't be waived or forfeited. It's also something that I think is amply supported by the record below. This court can, of course, affirm on any ground. Well, but is it jurisdictional in the adjudicatory sense or in the regulatory sense? Because if we're talking about the regulatory sense, then I don't think we're talking about the subject matter jurisdiction of this court or the federal district court. We're talking about regulatory jurisdiction, which is completely different. So I'm not sure you can say it can't be waived. Well, I mean, this is a decision about the tribal court's adjudicatory authority. Regulatory authority sort of gets into that. I might not entirely understand Your Honor's question. Well, if we're talking about our own jurisdiction, you're right. If we're talking about the district court's jurisdiction, but tribal and regulatory jurisdiction go hand in hand, and I don't understand why you can't waive the jurisdiction of another court, an entirely separate sovereign. It just doesn't seem to me that any of the jurisdictional precedent supports the non-waivability of it. So I believe the decision that we filed, that I cited in the footnote that addresses this issue, considered the jurisdiction of an agency. So sort of an analogous question of like, well, not the jurisdiction of the federal court per se, but still sort of was it within the jurisdiction of an adjudicatory body. But also, I want to underscore, of course, that even if an issue isn't raised to the district court, if it's supported by the record below under this Court's precedent, it can be considered. And here, anything factual related, really the record was built in the tribal court. That's where these records get  What was the inherent authority argument and the in rem argument? Were those made to the district court? They were not made to the district court, but they are reflected in the decisions below. The tribal trial court decisions refer both to the in rem jurisdiction. It just seems like this was teed up as a Montana Exception 1 case. The district court understood it as that. And it seems to be much more at this point. Well, I think the answer to that question is yes and no. It is more and it is not. Because I think that it is the easiest path for this Court to focus on Montana's first prong. I think that we have a strong case under Montana's first prong. And I'm happy to stay focused there for the remainder of the argument. I do think we win under that. Can I ask you a preliminary question about the first exception? I know you're about to get into it. But Nevada v. Hicks, a case I'm pretty familiar with, said that, there's a quote that said, all four of the cases cited about the first Montana exception involved private commercial actors. And I wonder whether the consent exception extends to domestic relations given that it's about, I mean, even look at the language of it. It's really about private commercial actors and consent in that context. Things like power lines running through the reservation, folks building things on the reservation, that sort of thing. Not domestic. I mean, there are cases from other circuits, but the Supreme Court certainly has suggested it's about commercial activity. So the first point I'll make is that I think counsel on the other side has effectively conceded at this point that it is not just about commercial relations. He said that if this had arisen within the reservation on tribal land, there would be jurisdiction. I don't understand the area. Well, you don't get to the first Montana exception, though. I don't. So pointing to Hicks again, Hicks said the fact that it's tribal trust land alone is not enough. You still conduct a Montana analysis. So I can't understand his concession as to the jurisdiction there without it being a concession that the marital contract and all the other things here actually are qualifying consensual relationships. But to get more into your question, first I'd say we should understand Hicks and Fort Gates, which was a similar case out of this Court, as cases really about whether agreements with governments, non-tribal governments, are consensual relationships. Another thing I'd point out is that in terms of why do we maybe not see as many family law cases raising these issues as we do commercial law cases? Well, most of the inherent jurisdiction tribes have over family law matters has gotten swept up into ICWA, where there can never be a serious question about the tribe's jurisdiction. So that just sort of gets rid of a stream of cases we otherwise would have seen arising. But if you were to draw an inference from the fact that the Montana cases have generally been about commercial things, I think the inference to draw is that it's because maybe this doesn't even fall within Montana 1 to start. It is within this inherent tribal jurisdiction. The jurisdiction, for instance, that the Supreme Court described in Three Affiliated Tribes v. Wold, a case decided, I think it was about five years after Montana, where the Court said the determination of parentage of children, termination of parental rights, commitments by courts, guardianship, marriage contracts, and obligations for the support of a spouse, children, or other dependents are, I'll quote, areas of traditional tribal control. I wonder, though, whether opposing counsel's right that this is at least the inherent sovereign authority part of it, take away the exceptions for a second, is about the territory, about tribal lands themselves. And the reason why I say that is in a related area, you end up having an extraterritoriality principle that prevents you from, prevents like the state of Minnesota, for example, regulating something that's happening in Wisconsin or Iowa. And I wonder if you don't have the same sort of principle playing out here, which is the territory is what stops at least the inherent sovereign authority from reaching out into state lands that are off reservation. So I think there are two things I'd say to that. The first is that the nature of tribal sovereignty is unique. The United States has eliminated most tribal land bases. In some instances, it's deprived tribes of lands altogether. And tribal membership, or sorry, tribal jurisdiction has ended up being something that stems primarily from tribal citizenship rather than tribal territory. I believe the Supreme Court has, in fact, described a tribe's jurisdiction over its territory as actually stemming from its authority over its members. So membership is really the touchstone. And I also think that the other side's concession about jurisdiction in the situation where it's on the reservation is significant. So first off, as I heard him, I think he initially did concede it would satisfy Montana. But even if you sort of have, understand him as taking that back and saying, no, no, no, it's inherent jurisdiction, the cases that have talked about inherent jurisdiction have been crystal clear. If this is an inherent family law jurisdiction case, that jurisdiction has never been understood by any court that has grappled with it. It's limited by territory. In fact, it is sort of been used as, it's been historically contrasted with Montana-type jurisdiction to the extent it has a tribal restriction. And one thing I'd like to underscore is a point you made, Judge Estras, at the beginning, which is this is not a case about whether the State court has jurisdiction along with the tribe. The State court does, for the most part, the parties agree on that. And this is also not a case about which court is the more appropriate form. That was the issue before the State court, and the State court determined that the tribal court was the more appropriate form under traditional considerations of comedy. In that respect, I don't understand opposing counsel's position that in any other situation this would have stayed in Minnesota court. The Minnesota State court used the same analysis under the UCCJEA that it would use when it was deciding whether to transfer to a State that is not the home State. It is, in fact, quite common for divorces to end up being adjudicated in courts that are not the home State per se. That's exactly what the UCCJEA, adopted by 49 States, has provided for. But that's ultimately not the question here. The question is whether there is concurrent tribal jurisdiction over a divorce that involves the distribution of tribal resources and the care and custody of tribal children where the State court has recognized that the tribal court is the more appropriate form. So, Jordan, do you... Are there any Supreme Court cases that apply the consensual relationship exception to a non-member's off-tribal lands conduct? Sorry, did you ask if there's any Supreme Court cases? There are not. There's not that many consensual relationship cases in general, but I think that the Alaska Supreme Court in the Central District case and the District Court below sort of explained this principle pretty well, which is they observed that, pardon just a second, they observed, oh, the Supreme Court, the Alaska Supreme Court observed in John that courts generally have not had occasion to examine tribal jurisdiction out of Indian country. I'd say that's certainly the case for the U.S. Supreme Court. There just has never been a case the Supreme Court has taken on this question. And as the District Court observed here, tribal lands are just one way the first Montana exception might be invoked, and cases have simply had no need to explore the extent of tribal court jurisdiction over a non-member who does not reside on tribal land, though this Court, as some of the questioning before underscored, has had opportunity to examine if there even is a lands requirement, which, you know, I think would be satisfied here regardless. This Court's cases going into that subject have said it's not a requirement of physical presence on the reservation per se. We actually do have physical presence over the years here, but even without that, as was pointed out, cases like API and Dish Network refute the notion that it would have to be that physical entrance within the reservation. Rather, to the extent this Court has articulated the test, it has made clear that any tribal lands requirement requires only that activity occurring off tribal lands relate to activities on tribal land. Well, you mentioned two other cases. But what about Hornell Brewing? So Hornell Brewing, of course, was a second exception case. And my recollection is none of the conduct that the brewing company involved in that case engaged in ended up sort of making its way onto the reservation. It was all off-reservation impacts. And here, by contrast, it was visits to the reservation, civic events, community events, connections to family on the reservation. They stay near the reservation. We have reservation resources coming to the family that McGowan availed herself of. Obviously, the tribal capital payments has been discussed, but also tribal health benefits. And one other thing I think that's helpful when sort of trying to understand, to what extent was it apparent to McGowan that this matter may end up in tribal court? And I draw this out because it's actually not something that we highlighted in the brief, but I want to underscore, is this is not the first time the parties have considered divorce. In 2018, and this is reflected in our appendix at page 14 in an affidavit that Mr. Tick submitted to the state court, and it did make its way into the record in this case, that in 2018, the parties actually initiated divorce proceedings, just like they did this time, in tribal court and in state court. And they reconciled. And then they continued on for four more years of marriage, at which point this fact pattern recurred. And so McGowan was aware for at least the last four years of the marriage that there would be a claim to tribal court jurisdiction here, and she did not, for instance, ask, as part of the reconciliation, for a postnuptial agreement that would make clear that the state would be... What's the legal significance of that? I mean, that a non-lawyer didn't ask for a postnup because... You know what I mean? It's legally, what does that matter? I think it matters... You're saying it's foreseeable? It was certainly foreseeable in 2018? Yes, that's the point. That this matter might be litigated? That it might be litigated, and it might be litigated in tribal court. Or state court? Or federal court? Well, not... I just don't know. You know, the dispute was delayed. So, not federal court on the merits, obviously. That's not within this Court's jurisdiction or a federal jurisdiction. Yes, it could have been in state court. One can imagine a fact scenario where McGowan won the debate about which was the more appropriate form. Those tribal courts have said there are situations where, despite there being concurrent jurisdiction, it is the state court that is the more appropriate form. And both fora here engaged in a serious analysis of that question and reached the same conclusion. How important, though, counsel is, is the money? You mentioned this in about a minute or two ago, the money. So, change the facts. Member, non-member live off the reservation. They get 100% of their income from, you know, from their private jobs at Starbucks or Target or whatever. They don't go to... I mean, again, a member, but they don't go to tribal events. Why would the tribe have jurisdiction in a case like that one? And how is this case different legally from that one? So, I'll stay focused on Montana's first brawl. And the first thing I'll say, I heard a question from you about how do I write the opinion. I think this is one of those nice cases where you don't ultimately have to really figure out where the lines are drawn because there's so much that goes towards showing jurisdiction over the first prong. And we don't, of course, need to really figure out for sure how much that income would matter. Here, though, I think it is a really substantial consideration. I think that when you're talking about a divorce that's determining the distribution of tribal resources, resources that are the basis for the family support, including the care and custody of the children, I think that you are definitely satisfying any separate inquiry into impact on tribal self-governance and tribal self-relations to the extent there is that requirement. I struggle with that. I mean, I don't have clear views on it, but it seems odd to me that the tribe follows that money. It's clear that the tribe can write those checks only to tribal members, right? But your client can do absolutely whatever he wants with that money at that point, correct? The tribe doesn't have any further hook in it. And it just seems to be, he could spend it on new cars if he wanted, right? And the money that's spent certainly wouldn't bring in an argument from car dealers, you know what I mean? It just seems like it cuts off. They pay it to a tribal member and what he does with it at that point, and he spends it on his family. I don't know if that's a question or not, but it reflects my unease with that hook of tribal money. It goes to the tribal member and then he chooses to spend it on his family. Why is my instinct there wrong? Well, maybe it doesn't matter. So I think that there's a clear distinction between I bought a car with some tribal money and how the money within the marriage is being treated. So first off, Montana looks at connections between not just the tribe and the non-member, but also between the members and the non-member. And here, the money is among the arrangements as part of the overall marriage that's sort of continually, you know, a core part of, central to their lives, really. And it's being used, not just the member giving it to the non-member. Well, I didn't say that. It's being spent on the family, right? Including the tribal children, so it continues to have a serious hook for the tribal welfare in that respect. But two more points I'll make on this. One is that the tribe actually does continue to assert jurisdiction over the money and over ticks. In as much as the money doesn't leave the marital relationship, the tribe asserts that the property remains non-maritable, non-marital, excuse me, property. And then second, there's such a close nexus. I think it's plain that if you are relying entirely on the tribe for your livelihood and you readily accept all spouses. Or are you retiring like many spouses do entirely on your husband? I mean, it just seems like a different way of framing it, right? We're using a different model here. And I understand tribal Indian law is very different. But I'll leave it at that. I think I've wasted, maybe getting to the point of wasting your time at this point. Not at all, Your Honor. Let me ask you this. How do you square your position with the guidance of the Supreme Court in Plains Commerce or what we suggested in Kodiak Oil, that the consensual relationship is limited to implicating tribal self-government and internal relations? So we think that's required. That would be satisfied here because it carried custody of the children and implication of tribal resources. Tribal resources that are still owned and possessed by the tribe. I mean, really, in this case, it's your point. Owned and possessed. What do you mean by that? I mean, really, I think this dispute, and I see my time has expired, but I think really this dispute, what's motivating this dispute is those future per capita payments. I believe there's even a point in the brief where Ben-Gohan more or less makes clear that's what is driving this here. Those future per capita payments are not TIX's right now. They are the tribe's and to the extent we're talking about what's going to happen to those payments in the future, I think there is an interest that is distinct from, you know, oh, well, is TIX going to buy a car with some per capita payments in the future? Could I ask one additional question? I just want to ask you because I asked the opposing counsel, Rule 19, the indispensable party of the tribe. I just want to give you a chance to respond to what opposing counsel said. Yes. So, the main thing I'd underscore is, of course, I don't represent the tribe up here. I represent Mr. TIX, and I think that underscores the Rule 19 problem. More generally, I think I would say on Mr. TIX's behalf, I take the tribal court at its word when it talks about a prior case where the tribe refused to issue an order along with the state court order, and that the tribal member there, according to the tribal court, was subject to civil contempt penalties in state court. On that point, just really quickly, does it matter that they're here as amici? I mean, that we kind of have them. We don't have them here as a party, but we have them as amici on appeal. Does that matter? I don't think that it does, Your Honor. There's case law out of the Ninth Circuit and the D.C. Circuit. I would point you to an opinion Justice Scalia joined in 1986, the same as the Ninth Circuit, that specifically addressed this question and said amicus participation is not enough. Thank you. Thank you, Mr. Powell. Rebuttal? Yes. Thank you, Your Honors. I wanted to just address Justice Strass's point about the territorial limits of jurisdiction. And there are certainly instances where tribes have off-reservation rights, like we can think of ricing in Minnesota, hunting or fishing, that's all often off-reservation. But those rights are expressly reserved in writing. And so we start from the idea that tribes are inherent sovereigns, and when they entered into treaties with the United States, that's why they're called reservations. Rights are reserved. And so they reserved the right to hunt and fish off the territory. But apart from that, all the limits on tribal sovereignty are based on territory. Okay. So maybe. But what about when you have two tribal members living off-reservation with tribal kids and tribal money? And they're living, you know, elsewhere in the state. Wouldn't it be pretty clear that the tribe has jurisdiction over a divorce in that circumstances? Two tribal members? Two tribal members. I would imagine. Territoriality may be important, but it's not dispositive. Well, certainly Congress has weighed in. And they weighed in with regard to Indians. And maybe this is the answer. So in Durrell, the court said, you can't regulate non-member Indians, right? You can't prosecute them. Congress turned around and said, yes, you can. And so they did that by saying you can prosecute members. But there, the authority was limited to the territory. And they went to the definition of Indian country, which defines territory. And likewise, you could say, well, this is not a criminal case. It's civil. It's different. Yeah, but so there's the Violence Against Women Act, which was recent, just two years ago. Congress weighed in and said, okay, they raised all these Alaska cases about non-territorial jurisdiction. They said no. They defined the scope of prosecutorial power to the village. So again, it's a territorial boundary. And then with regard to divorce proceedings in general, Congress expressly excluded divorces from tribal jurisdiction without the they're excluded from ICWA. So if this was such a grave problem, why did Congress exclude divorces? So I see my time is up. And we'd ask the court to reverse the decision below. Thank you. Thank you, Mr. Fidler. Thanks to both counsel. We appreciate your appearance and arguments and briefing. Case is submitted and we'll issue an opinion in due course.